Appellant, Mr. Smith for the Appellant, Mr. Howland for the Appellee. Good morning. May it please the Court, my name is Greg Smith and I am the Appointed Counsel representing Shawn Hughes and Mr. Heal. This case should be remanded so the District Court can do the justice it wanted to do but felt it couldn't. This Court should reverse for any one of three reasons. First, the District Court erred in believing it must reimpose the same sentence it declared illegal after a vacator. Second, the District Court also erred in finding it couldn't modify the restitution amount or at least apply an offset credit. And third and finally, the District Court and this Court both have inherent authority to require notice to the Court and Counsel before the Treasury seizes funds at DOJ's request for the sole purpose of satisfying a judicial criminal restitution order. Could I just find out what stage things are at? The tax refunds have been in fact not said to have been kept by the Treasury. Correct. And has her mortgage been foreclosed? Your Honor, she is still fighting the mortgage and still does have her home. I don't know quite how. I think perhaps through help from friends and family. But it has not yet been seized although it is still in foreclosure proceedings. So I think that the matter remains tangled. But the refund money is now in the Treasury, in the Treasury's General Department rather than what the Treasury owes to people. Yes. Okay. Turning to the first issue, the Court did not need to reimpose an erroneous sentence after a vacator. The Court could re-sentence her. Finality concerns were no longer in play once the original sentence was vacated without objection by the government. The vacator was never itself vacated. The government had consented. That finding was not clear error and there was a formal order of vacator. The original sentence in fact remains vacated today, over two years later. Let's say that the government did not concede that it was okay to vacate the sentence. Would the Court nevertheless have authority to do it? In other words, does your argument rest on their concession? Their position is they did not consent but the Court found that they had and so our position is that the vacator, since it was not objected to and it remains in place and they never appealed the decision or cross-appealed it and it remains vacated today, that it is a vacated sentence. Because it was vacated, the Court could re-sentence and it acknowledged the original sentence had two significant errors. It even apologized to Ms. Hughes back here for having to re-impose it because she didn't want to do it. She said it was admittedly an illegal sentence. The government's position, Judge Brown, is that two wrongs make a right. That even though it was a wrong sentence, she was required to re-impose a wrong sentence. Well, I don't think that's required. Under Dorsalee, this is not a mandatory restitution situation. And we're manned here as we're called. Can we put that aside for a moment and turn to the question of whether, under Rule 36, she could resolve self-contradictions in the original judgment? I mean, suppose, I'm not sure this is the case, but suppose there's a contradiction between the mandated monthly payment and the principal sum. The relationship is certainly not made crystal clear. Would Rule 36 allow her to clarify the seeming self-contradiction, the possible self-contradiction? Your Honor, we do believe Rule 36 provides that authority. And that's our second argument, is she also had the ability to modify the restitution order, pursuant to Rule 36. Well, yeah. When you talk modify, then it seems to me you run into trouble in terms of the relationship between 36 and 35. I misspoke. If it's a matter of removing an ambiguity, resolving an ambiguity, it seems somewhat different. At least Arrington seemed to suggest that within the compass of Rule 36 was making the intent clear. Now, how you discern intent is another issue. Yes, Your Honor, I misspoke. She could modify it through a different provision, or she could have used Rule 36 as a means of vacating the decision. So you're correct. Rule 36 is not technically a modification statute. It is a correction statute, not a modification statute. I take the Court's point. Right. And correcting, quote, clerical errors, which at least in Arrington we seem to view as including making the sentence correspond to the intent and how the intent is ascertained is a separate question. Right. And we think you should remand so that she can, if there are any questions about her intent, she should be the one to make that clarification first. We also believe that remand is required here in any event. The government itself concedes that the second sentence, the re-sentence that was imposed, in fact, was not the same as the first sentence. And so we think that you have to remand this case anyway for the judgment to be corrected. And when you remand it, we believe the Court should also be told that she can impose a sentence that she believes is legal under 3553 and due justice. As I mentioned, the second way of getting there is to, the district court erred in believing it could not either modify the sentence or correct the sentence. We cite a variety of factors on which correction or modification is possible. And the government can't have it both ways. We believe that they can't argue to Treasury that Ms. Hughes was delinquent and at the same time argue that 3614 doesn't apply because she had not failed to make any payments. We also submit that she had changed circumstances and that also justifies a modification. You could trigger a re-sentencing by not paying, right? Your Honor, it is an odd situation where if you're complying, you don't get a potential re-sentence and if you do comply, they're saying you can't. But we believe that is one of the ways. That's something you could do. Say you lost here. You could still decline to pay and under 3614 trigger a re-sentencing. Is that correct? I guess so, Your Honor. It seems like an odd thing for the Court to require a non-compliance in order to get relief. I think there are other ways you can get there that might be... If we don't have legal authority, we don't have legal authority, but you would still have an option to... And it's a roll of the dice because I guess it could be any sentence that could have originally been imposed, which could be a longer sentence. Right. We hope the Court won't go that route, but I take the Court's point and if we end up there, we'll have to consider that. But hopefully there are better ways than encouraging people to not pay in order to get restitution changes based on changed circumstances. In any event, even if there is no change or modification of the original sentence, we also believe that the Court could have and should have applied the default judgment as an offset that was imposed against Blackhawk. The PSR itself said that according to the government, this amount, meaning the default judgment amount of $4 million, will be used to offset any restitution owed by the defendant. Pursuant to the JNC itself, no restitution payments were even supposed to begin until after the adjustment where the fine to Blackhawk will be applied. The Court said she should have paid $50 a month only if restitution is owed, and she admitted that she never believed that Ms. Hughes was going to be on the hook herself for $400-and-some-thousand when the company was expected to pay. The Judgment and Commitments Order said only that the fine would be offset, not the fine recovery would be offset, and we submit the best reading is that the fine itself should be offset. Finally, because I'm running out of time, this Court also has inherent authority to require notice before Treasury does what it did here. That notice is done in South Dakota by the U.S. Attorney's Office, and we require that it be done in this Court, too. How exactly did the Justice Department certify to Treasury that Ms. Hughes was delinquent on January 31st of 2012, less than 30 days after the judgment, before her first payment was even due, so that they could sic Treasury on her is incomprehensible. I don't know how they can truthfully have certified that to Treasury. We haven't seen their certification. I'd sure like to see it, but before her first payment was due, the Justice Department certified to Treasury on her by certifying she was delinquent. She was not. She was, in fact, paying early. And more importantly, institutionally, for those actions to be taken without a district court even knowing will undermine rehabilitation efforts. It will not misuse, because she's a wonderful person, but with some people it would only encourage them to get back into a life of crime. And a district court ought to know if Treasury is seizing funds that are coming to people who are under their criminal orders, when the only reason Treasury is going after them is the restitution order itself. I reserve. Thank you. Good morning, and may it please the Court, a slightly raspy Christopher Howland on behalf of the government. I want to begin by emphasizing that the government is not unsympathetic to Miss Hughes or her circumstances. Likewise, the government recognizes that the sentence imposed by the district court didn't turn out as the district court intended. How do you read that sentence? The sentence by the district court? Yes. The sentence by the district court imposed that she that she was Miss Hughes was responsible for paying under the MVRA, the Mandatory Victims of Restitution Act, the $442,000. And how was that to be paid? It would be joint and several with Douglas Brown, and then any amount recovered by Black Hawk. How was her share to be paid? Her share was to be paid at a rate of no less than $50 per month. And the district court also provided... What do you understand that to mean as to possible increases? I think that the question that the judge, the district court didn't... I would also point out that at the sentencing, the district court said that the restitution amount was immediately payable. And so it's immediately payable, but Miss Hughes was required to pay at no less than $50 per month. And you still aren't answering my question. What circumstances do you suppose the judgment contemplated for anything other than $50 a month? I'm not sure that the district court contemplated any other circumstances, which is exactly why... So you'd be resting on the not less than. What do you get out of the not less than? I think the not less than is clear on its face that Miss Hughes was responsible as Judge Collier pointed out in her sentence at the beginning. The restitution was immediately payable, but she was required to pay at a rate of not less than $50 per month. And so... So you're saying the not less than $50 a month means that the $440,000 is immediately due in full. Is that the way you're reading it? It seems to me that there's a far more plausible reading, which is that if her financial circumstances change radically in the upward direction, the $50 a month could be increased by the court on application by probation or something like that. I would... I think that... I mean, to read it as saying that the $440,000 is immediately due seems hard to justify. I'm sorry, I missed the last part of your question. Hard to justify. That reading it at no less than $50 per month... No, reading the not less than $50 a month, the $440,000 is immediately obliged to pay, the $440,000, I think... Well, the... It introduces a self-contradiction into the judgment that isn't there. I don't think that there's necessarily a self-contradiction. I think what the district court said was that it was immediately payable, and this was what she said at the sentencing hearing, and that controls, of course, over any ambiguity in the... The $50 a month. She also said that a rate of not less than $50 per month. And she also said, Judge Collier, that if there is... Judge Collier, you insist that the not less than can only mean immediate obligation to pay the $440,000. That's what it's... I mean, not less than $50 per month on its face means that she... That Ms. Hughes could be responsible for paying the full amount immediately payable. You reject the possibility of any other interpretation. Excuse me? I'm sorry. You reject the possibility of any other interpretation. I don't reject the possibility of any other interpretation. I don't think that the court's unanimous proceeding indicated that it was intending to impose. So I want to get... So the first point is that the district court carefully reviewed the statutes, carefully reviewed the case law, and reached the conclusion that it lacked the authority to vacate the sentence as it was originally imposed, and the court certainly could have dealt with these questions at the time. But in the court's view, it didn't possess the inherent authority to modify the terms of the otherwise valid and unappealed sentence. The legal technicalities that the government is accused of relying on are actually congressionally mandated dictates about the limits on a district court's authority to modify an otherwise valid, final, and unappealed sentence. What's your view of the scope of Rule 36? We agree with Arrington, which is that Rule 36 is meant to correct clerical errors or clerical omissions. It's not intended to be an end-run around the timeliness requirements. What's your view of self-contradiction? Or has hopeless ambiguities? I think, well, first of all, that this is the first time that we're hearing that argument. And so if that argument had been presented to Judge Collier, she might have had a different reaction. But that's not the argument that was presented. There wasn't an argument that there was a self-contradiction in Judge Collier's sentence. The issue that was squarely before Judge Collier was whether the NBRA applied. And so it's hard to fault the district court for not recognizing a self-contradiction when the district court itself didn't think that there was a self-contradiction. I just want to point out the limits and the exceptions under the NBRA are very specific. Congress clearly delineated them. We set forth in our brief how each of them are not applicable in this case. I want to address the waiver point that the court made some sort of a factual finding that Mr. McDaniel waived any issue with the court's ability to vacate the sentence. What the court actually said was, I will say that sitting here, I thought that he agreed. That's far from a waiver. And I would encourage the court to read the transcript carefully because there was sort of a back and forth discussion about this issue. There was certainly no clear and intentional relinquishment on the part of Mr. McDaniel to give up an argument that the district court lacked the authority. Turning to the second issue, which is whether the NBRA actually applies to Ms. Hughes' offense, the first issue is that that argument also was waived. Ms. Hughes could have raised any issue with the NBRA when the initial sentence was imposed. She didn't do that. Instead, Ms. Hughes waited more than a year to raise any sort of issue with the NBRA. This court should not allow such an end run around the timeliness requirements of Rule 4B. Additionally, dorsally does not stand for the idea that an offense under 1001 can never constitute an offense against property if that conduct causes the loss. In dorsally, the issue there was causation. And so the false statement that Mr. Dorsally made was not part of the conspiracy to defraud the government. The false statement that Mr. Dorsally made was in the FBI investigation. And so the fraud had already been committed and the false statement during the FBI's investigation didn't actually cause the loss. So Mr. Dorsally's 1001 conviction was not, in fact, an offense against property. It didn't cause any loss at all. So dorsally is not on point with this case. Is it your position that dorsally could never be read as implicitly accepting this categorical approach? No. Yes, that is our position. I don't think that dorsally was dealing with the categorical or the modified categorical approach at all. In fact, the cases upon which Ms. Hughes relies are under the Armed Career Criminal Act. And that's a totally different context. It deals with what constitutes a violent felony. And so certainly dorsally can't be read to have implicitly endorsed a categorical approach when that wasn't even the issue that the court was deciding. That issue hadn't been briefed whatsoever. Nor had the issue, by the way, of whether the offense constituted an offense against property under the MVRA. And so we would rely on the cases from the other circuits, Peterson, Singletary, that do suggest that or stand for the idea that if a false statement contributes to a loss, it can constitute an offense against property under the MVRA. Finally, just briefly because I'm running out of time also, the top seizure in this case was proper. As we point out in our brief, this is an improper forum. This court is the improper forum for Ms. Hughes to be making arguments about whether the government has the authority to seize her tax refund. She has administrative remedies that are available to her. Is there some language in the provision for administrative remedies that states that they're exclusive and a prerequisite to any judicial review? I don't know the answer to that, Your Honor. What I would say is that if Ms. Hughes were to avail herself of an administrative remedy and she were to receive an adverse decision, then certainly under different statutes, including the APA, for example, she would have an ability to petition this court and ask for this court to look at that particular decision. If it ended up being adverse, this is the thing. As far as I'm aware, Ms. Hughes could to this day still petition whichever administrative forum is the proper forum for her to be making these claims. However, unless there's something making that exclusive, it's not clear why she should do so or why she has to do so. And I'm sorry, I just don't know the answer to that question, but again, that's not an argument. I mean, when you rely very heavily and persistently on exhaustion, it seems suitable that you would point to something making exhaustion mandatory. Your Honor, I don't know the answer to that question. But it's not really exhaustion, is it? You're just arguing this is not the right forum. That's right, Your Honor. I'm not sure if it's a categorically different... I mean, you're not saying you can come back here in this kind of proceeding, are you? In the district court? Correct. Right. I think that's right, Your Honor. She could petition... It's not exhaustion before you go back to the district court. It's a separate mechanism, procedural mechanism. That's probably a better way to put it. Yes, Your Honor. Thank you for clarifying for me. You say in your brief at page 47, you're prepared to present evidence of a hearing on remand if an appellant received a notice of intent to offset. Since that seems to be a furnishing of proper notice, which seems to be a prerequisite to the exercise of any exhaustion requirement, if there were an exhaustion requirement, you might share that with us. Absolutely, Your Honor. In Ms. Hughes' reply brief, she submitted what we would consider to be the notice that she was due in this case, which is as part of the reply brief, it was a notice of intent to offset. I believe it's in the record. I think it was attached as an exhibit to Ms. Hughes' reply brief. But it's called the TOPS notice, so that's how I think of it. It provides the specific mechanisms. For example, I'm just quoting, to avoid referral of your debt to the Treasury offset program within 60 calendar days from the date of this notice, you must, one, pay your debt in full, two, enter into a repayment agreement. That would be a repayment agreement with whichever certifying agency. It was a certifying agency. In this case, it would be Justice. Or three, present evidence that all or part of the criminal or the civil judgment debt is not past due or that the judgment has not been stayed or satisfied. In other words, there are mechanisms that are in place that Ms. Hughes could have followed and that could have avoided this entire proceeding. Those mechanisms weren't followed. And so it's, you know, I would, for these reasons, I would respectfully request that the court has. Do you agree that if you prevail in this case, 3614 allows the defendant to fail to pay the restitution and to get a resentencing? With one caveat, yes, Your Honor, but with one caveat. And the caveat is that the district court on resentencing may impose any sentence that may have originally been imposed. So it could go up or down. So it could go up or down. What were you going to say? I interrupted you, though. That's okay. What were you going to say? You were going to say something else. Well, I was going to say that, and I haven't thought about that specific question, but I think that 3614 does provide sort of perverse sentence. It's a very odd provision, but I just want to make sure I'm reading it the right way. Yes, Your Honor, I was just looking at that a moment ago, and I think what the provision says is that if there is a resentencing, then the district court is allowed to resentence misuse to any sentence which may have originally been imposed. But, again, I would point out that these are arguments that could have been made in the first instance. If there was an argument that misuse – I'm just saying going forward that could happen, right? Well, we submit that any argument about the MVRA is waived, and we also submit that the district court lacks the authority. Under 3614, again, I don't know. I think that those are issues that could be briefed. The implication of the provision is that you could impose a new, higher sentence for failure to pay restitution, but the phrasing of the provision suggests that you could impose any sentence, including a much lower sentence. Right, one that may have originally been imposed under one of the provisions that provides for allocation. Government counsel at the initial sentencing accepted at least the idea of $200,000 restitution, right? But the actual amount of the losses was $442,000, and as the court said, the losses, you know, it is what it is. And so the argument that the loss wasn't ascertainable by the district court is flatly contradicted by the record. Well, the top seizure doesn't seem to be particularly related to the sentence that the district court gave here. So my question is, even if 3614 would allow for resentencing, would it have any effect on what the government has already seized? Would it have any effect on the amount that the government has already seized? And that, again, I just don't know the answer to those very technical questions. There are people in the Department of Treasury, probably people in the financial litigation unit of the U.S. Attorney's Office who could answer that specific question. But those are issues, again, that can be briefed. If there is a remand, if the court is inclined to remand, those issues can be briefed and fully fleshed out. But those were not the issues that were squarely before the district court, and so it's difficult to fault the district court for not answering these questions or not asking for additional briefing when those weren't the questions and those weren't the specific statutory provisions that Ms. Hughes relied on below. So I think that to follow up on Judge Brown's question, I think you said you don't know the answer, but I want to play this out. If the resentencing, if they didn't pay, there's a resentencing and the district court in the resentencing imposes zero restitution. Could she then file for a tax refund to get the money or a refund of some kind to get the money back that was already seized? And I think you're saying you don't know the answer to that, which I understand why you wouldn't know the answer to that. Yes, Your Honor, I will say that people file civil lawsuits against the government all the time. And as we point out in our brief, in this case even, Ms. Hughes could have filed a civil lawsuit arguing that the seizure of the TOP refund was not done in accordance with the appropriate regulations. And we submit that that was the proper mechanism. You think she'd lose that suit, though, right? I mean, you're throwing out an option of losing in a different forum. Under the terms of the district court sentence as it stands, I think that the government would have strong arguments on appeal that the top seizure was appropriate. I mean, and again, I just want to point out that the TOP program is not a function of the government. It's a function of Congress. Congress has specifically mandated that for... Yes, but it's for past due debts. That's the issue that troubles me. Well, and... What's past due? Well, according to the district court at the sentencing hearing, the restitution was immediately payable. And so under the government's view, the... If the $50 a month is immediately payable, that's then immediately payable to that extent. Well, as we point out in our brief, there's a host of federal authority that suggests that simply because a court orders a payment schedule, that's not the only means that the government has to obtain debts that it is owed under a valid and final... Right? Because if the debt is to be paid $50 a month, then that's the debt, right? You've changed the debt to the principal amount, which is different. Well, the... At least in terms of debtor-creditor relations. The restitution obligation is for the $442,000, and that's... Excuse me. In the government's position... It's also $50 a month. What's that? It's also $50 a month. Well, that is the court's payment schedule. But again, as we point out in our brief, just because a court imposes a payment schedule, that's sort of the floor. That's not the only means that the government has at its disposal. That's not the only tool in the toolbox that the government has to recover these kinds of restitution obligations. Certainly, if there were a major corporation and the court imposed some sort of de minimis payment schedule, the government would be seeking to recover whatever judgment in that case. And I'm posing a hypothetical, and I should probably refrain from doing that. The government would be entitled to appeal if a payment schedule were set up... Your Honor. ...regarding violating the mandatory restitution provisions. Well, I think that if Your Honor is suggesting something along the lines of the, I believe it's the South District, South Dakota District Court case, Buelke, B-U-E-L-K-E, the U.S. Attorney's Office, the government in that case went through that process, but there's nothing mandatory. There's nothing that requires the government to go through the district court to ask permission, in effect, to try and recover on debts that a district court has imposed, that a district court has sentenced a... I think you're assuming that conclusion. I just want to ask, you know, what's wrong with that process? That seemed like a very reasonable way to approach it, because it would have clarified, then, what the district court saw as the debt. In other words, by not doing that, the government is able to simply assume that what she meant was the whole debt. You know, maybe that process is one that every district court and every branch of the government should abide by in every case. If the court, if this court is, you know, sort of going to make such a pronouncement, you know, maybe that will change, you know, the entire procedures for enforcing restitution obligations under the top throughout, you know, the country. This would be, I don't think that a circuit court has ever held such a broad-ranging requirement. Well, we're not talking about the enforcement of all, but we are talking about what happens when the basis of the seizure is something that a court has done. This is a criminal... In other words, this was a criminal restitution action here. So it's much more limited than every possible way that the government might seize assets. I'm not sure I'm understanding Your Honor's question. Well, I believe that the debt here is a function of what a court in a criminal case did. That's absolutely correct, Your Honor. But we submit that the district court's sentence was absolutely clear about what the sentence was, what the amount of the restitution was. And so it's unfortunate that the government wasn't able to recover from... When she looked at it again, she said that was clearly not what I intended. Well, I think what she said was it was clearly not... She didn't intend for Ms. Hughes to be clearly saddled with the entire amount of the debt because the assumption was that the government would recover, you know, some amount of money from Blackhawk. That, as it turns out, didn't happen in this case. And so the question before this court is whether the district court had the authority to modify what was an unambiguous sentence, a final, valid, unappealed sentence. But if she had wanted that, why wouldn't she have made her jointly and severably liable with Blackhawk? That would have been clear. She was only jointly and severably liable with Brown, who was for all intents and purposes judgment-proof, and she set the payment at, you know, at least $50, which doesn't... You know, I mean, there were different ways for her to do it. So why is that unambiguous? I think that that's your Honor's question makes my point, which is there were different ways that she could have structured this sentence, and the structure of the sentence is the problem with the sentence itself. If the district court in the first instance wanted to say to apportion liability, you know, $10,000 for Mr. Brown, $10,000 for Ms. Hughes, and the rest for Blackhawk. And if the government can recover it, great. And if they can't, that's the government's, you know, issue. But that's not the way, excuse me, that the district court structured this sentence in this case. And so, you know, where we could have been a year ago is not where we are today. And so the government would submit, I mean, the district court reviewed all of this. Well, let me just say it's kind of a strange way to interpret what happened in this case. When you started off by saying the government is not unsympathetic. If there are no further questions, I would respectfully request that the court affirm the judgment of the district court in this case. Thank you, Mr. Howard. Mr. Smith had no time remaining. The court will allow you two minutes for rebuttal. Thank you, Your Honor. You can say, has the, have you filed some sort of protective action in either district court or the court of claims? No, Your Honor. My client is indigent. I'm appointed only for purposes of this court. You know, they talked about her filing a lawsuit. I mean, she's fighting to save her home. She can't afford a lawyer. Let's be real. You know, the 60-day notice came only to her, the one the government was referring to, not me. Had I known, I wouldn't have gotten out of the case. If I'd known that T.O.P. was going to be seizing her assets, I probably would have stayed in the case. But I didn't know. I notified the government that I was out. But as I did, I told them, this money is not yet due. Justice was told that specifically, and yet they proceeded with the seizure anyway. How they, we still don't have the answer. How did justice certify less than 30 days after the sentence that she was delinquent in order to sit T.O.P. on her? I don't know. But I can tell you this. Well, the theory is the whole thing is due on day one. Well, I understand that's their theory. But T.O.P. procedures require a certification of delinquency. And she was not delinquent as of January 31st of 2012. And I can tell you this for what it's worth. And this uses one of my, I've been doing this 30 years. Point of personal privilege. She is one of my top three favorite clients of all time. She is one of the sweetest, nicest people. If there is a heaven, she is going to it. And for this to be particularly happening to her, I mean, just look at the character letters. And there was a lot more that could have been said at the sentencing hearing. She is a genuinely, truly nice person. And for them to now be saying that she may even be subject to Social Security withdrawals because of this judgment is outrageous. I appreciate the court's time and attention. And I hope that this court will remand this case so that justice can be done. Thank you. Thank you, Mr. Smith. The case will be submitted.
judges: Brown, Kavanaugh, Williams